Slip Op. 10–131

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| FISCHER S.A. COMERCIO, INDUSTRIA AND AGRICULTURA, and CITROSUCO NORTH AMERICA, INC, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> FLORIDA CITRUS MUTUAL, A. DUDA & SONS, CITRUS WORLD, INC., and SOUTHERN GARDENS CITRUS PROCESSING CORPORATION, <br><br> Defendant Intervenors. | **Before: Gregory W. Carman, Judge** <br> Court No.  08 00277 |

*[Remand Results are sustained and judgment is entered for Defendant.]*

Kalik Lewin (Robert G. Kalik and Brenna Steinert Lenchak); Galvin & Mlawski (John Joseph Galvin), of counsel, for Plaintiffs Fischer S.A. Comercio, Industria and Agricultura and Citrosuco North America, Inc.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Patryk J. Drescher, Michael J. Dierberg); Mykhaylo A. Gryzlov, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for Defendant.

*Court No. 08-00277*                                                                                                               Page 2

<u>Barnes, Richardson & Colburn</u> (<u>Matthew Thomas McGrath</u> and <u>Stephen William Brophy</u>) for Defendant Intervenors Florida Citrus Mutual, A. Duda & Sons, Citrus World, Inc. and Southern Gardens Citrus Processing Corporation.

                                                                       Dated: November 23, 2010

                                                     <u>**OPINION & ORDER**</u>

**CARMAN, JUDGE:** In this case, Plaintiffs Fischer S.A. Comercio, Industria and Agricultura and Citrosuco North America, Inc. (collectively, "Plaintiffs" or "Fischer") challenged the final results of the first administrative review of an antidumping duty on Brazilian orange juice, <u>Certain Orange Juice from Brazil</u>, 73 Fed. Reg. 46,584 (Aug. 11, 2008) ("Final Results"). In an opinion dated April 6, 2010, this Court affirmed the Department of Commerce's ("Commerce") calculation of the gross unit price of Fischer's home market sales of non from concentrate orange juice ("NFC") and inventory carrying costs, as well as Commerce's application of the so called "90/60 day contemporaneity rule" found in 19 C.F.R. § 351.414(e)(2). <u>Fischer S.A. Comercio, Industria and Agricultura v. United States</u>, 34 CIT ___, 700 F. Supp. 2d 1364, 1381 (2010). However, the Court held that Commerce abused its discretion in rejecting certain pages of Fischer's sales agreement with its United States customer. <u>Id.</u> at 1376. As a result, the Court ordered the Final Results "remanded to Commerce to (1) examine the additional agreement pages submitted by Fischer . . . ; (2) determine whether the agreement set the

price for Fischer's NFC in the United States in a Brix neutral manner;[1] and (3) recalculate Fischer's dumping margin based upon consideration of the additional agreement pages." Id. at 1381. After considering Commerce's remand redetermination, the comments of Plaintiffs, and the replies of Defendant and Defendant Intervenor, the Court sustains the remand results and enters judgment for Defendant.

BACKGROUND

I. **Remand Results**

On May 24, 2010, Commerce filed with the Court its redetermination upon remand. (Final Results of Redetermination Pursuant to Court Remand, ECF No. 70 (May 24, 2010) ("Remand Results").) Commerce examined, as directed by the Court, certain pages of Fischer's sales agreement with its United States customer that Commerce had previously rejected, and analyzed their relevance to the price of Fischer's United States NFC sales. (Remand Results at 4 9; 13 20.) Commerce noted

---

[1] Brix is a unit of measurement for sugar solutions, expressed in degrees, "so graduated that its readings at a specified temperature represent percentages by weight of sugar in the solution." Webster's New Collegiate Dictionary 138 (1981). Orange juice with a higher Brix value is sweeter, and orange juice typically achieves Brix degree levels in the 60s when concentrated. See generally Tropicana Prods., Inc. v. United States, 16 C.I.T. 155, 789 F.Supp. 1154 (1992); see also National Juice Products Ass'n v. United States., 10 C.I.T. 48, 57 n.13, 628 F.Supp. 978, 987 n.13 (1986) ("Degree brix is a measurement of the percentage of the soluble solids (sugar) in a concentrate, as measured in air at 20° centigrade and adjusted for the acid correction of the solids. Thus, manufacturing concentrate with a brix value of 65° contains 65 pounds of fruit sugar solids in every 100 pounds of solution.").

*Court No. 08-00277*                                                                                           Page 4

that Fischer submitted a total of nine pages from the 63 page agreement, that the agreement was dated five years before the period of review ("POR"), and that the pages of the sales agreement did not indicate the effective period of the agreement. (Id. at 4.) Commerce acknowledged that the agreement contained a clause setting a straight price per gallon for NFC without regard to Brix level, and another clause providing for customer credit in case the average Brix of NFC during a crop year equaled less than a target Brix level of 11.8°. (Id. at 4 5.) Commerce concluded that, due to the lack of specific reference to a standard Brix level, the connection of the target Brix to crop year rather than specific sales, and the lack of a maximum Brix, "it is unclear at best that the agreement does in fact set a 'standard brix' for NFC." (Id. at 5.) Even assuming that the target Brix was the relevant measure, Commerce found that the record data were reported on a POR basis rather than a crop year basis, and so the agreement pages on the record did not definitively establish a standard Brix level for Fischer's POR United States NFC sales. (Id.)

Addressing Fischer's argument that it logically must have met the Brix target because it made no billing adjustments for low Brix levels, the Remand Results note that this reasoning only applies if the sales agreement was in effect during the POR. (Id.) Commerce then notes that the record evidence does not support the sales agreement having been in effect during the POR, since Fischer's reported United States sales prices

*Court No. 08-00277*                                                                                              Page 5

vary from the sales agreement price in several instances, and do not even appear to be set in gallons in some cases. (Id. at 5 6.)

Commerce unsuccessfully attempted to link the sales agreement terms to Fischer's United States sales listing, finding that almost a third of the sales were made at a price per gallon different from that specified in the sales agreement. (Id. at 6 7.) From this, Commerce concluded that the sales agreement was not reliable to establish that Fischer's POR United States sales prices were set in a Brix neutral manner, nor that conversions of those sales from gallons to pounds solids using actual Brix levels were less accurate. (Id. at 7, 18 19.) Commerce thus determined that it should continue to convert Fischer's United States sales from gallons to pounds solids using the actual Brix level of those sales as the conversion factor, especially given that Fischer's home market sales were appropriately converted to pounds solid using actual Brix level. (Id. at 7 9; 18 20.) Commerce therefore did not recalculate Fischer's margin. (Id. at 19 20.)

II.     **Comments and Responses of the Parties to the Remand Results**

Fischer argues that Commerce went beyond the remand order when it questioned the validity and applicability of the sales agreement. (Comments of Fischer on Final Remand Redetermination, ECF No. 76 (June 14, 2010) ("Fischer Comments") at 2 6.) Fischer argues that Commerce used the incorrect conversion factor to convert its United States sales listing into gallons and notes that, nonetheless, 10 of the 14 sales

*Court No. 08-00277*                                                                                                              Page 6

were still found to have been made at the price per gallon referenced in the sales agreement excerpts on the record.  (Id. at 6.)  Fischer also points out that two of the other sales were only two tenths of a cent higher in price, but does not discuss the prices of the last two of the 14 sales; Fischer also does not explain why any of the sales were not at the price set by the sales agreement or why, if Commerce used the incorrect conversion factor, any of the prices were accurate.  (Id.)  Fischer requests the Court to reject the Remand Results and itself recalculate the conversion of Fischer's United States sales from gallons to pounds solid using an 11.8 degree Brix factor, asking "[i]f the Court rejects Commerce's redetermination and remands again, what additional arguments will Commerce make and at what expense?"  (Id. at 8.)

       Defendant counters that Commerce complied with the Court's remand instructions.  (Def.'s Response to Pl.'s Comments on the Results of Final Remand Redetermination, ECF No. 86 (July 19, 2010) ("Def.'s Response") at 2 4.)  In general, Defendant reiterates the position taken by Commerce in the Remand Results.  (See generally Def.'s Response.)  Defendant Intervenors also generally support the positions taken by Commerce in the Remand Results and reiterate the arguments made by Defendant.  (See Def. Ints.' Response to Pls.' Comments on the Final Remand Redetermination, ECF No. 87 (July 20, 2010) ("Def. Ints.' Response").)

### DISCUSSION

Upon thorough consideration of the Remand Results, the Fischer Comments, and the Responses of Defendant and Defendant Intervenors, the Court finds that the Remand Results are supported by substantial evidence and otherwise in accordance with law and sustains them in full.

Despite Fischer's arguments to the contrary, the remand order of this Court never constrained Commerce to arrive at any particular conclusion upon its review of the previously excluded pages of the sales agreement. In fact, the Court indicated that one reason for the remand was the ease with which Fischer's margin could be adjusted "should Commerce determine upon remand that the sales agreement pages in fact substantiate that Brix levels above 11.8 degrees did not increase the United States unit price of Fischer's NFC." Fischer, 700 F. Supp. 2d at 1376 77 (emphasis added). The remand order directed Commerce, upon consideration of the additional agreement pages, to "determine whether the agreement set the price for Fischer's NFC in the United States in a Brix neutral manner." Id. at 1381. Implicit in these directives is the Court's recognition that Commerce is the appropriate entity to construe the meaning of the sales agreement pages in the first instance.

Commerce complied with that directive by analyzing the sales agreement excerpts placed on the record by Fischer, including the additional pages that the Court

required Commerce to consider. When Commerce compared the price per gallon of Fischer's United States sales against the price per gallon for NFC expressed in the sales agreement excerpts, it found that approximately a third of the sales were made at prices different from the per gallon price set in the sales agreement. Fischer has not offered any explanation for the discrepancy, and the Court is not aware of one. Based on this record evidence, Commerce reached the reasonable conclusion that the sales agreement price terms were not a reliable means of accurately measuring the price of Fischer's POR United States sales of NFC. In the absence of reliable evidence in the sales agreement as to the pricing of the United States sales, Commerce reasonably continued to employ the same methodology for determining United States price that it used in the initial investigation, the preliminary results of the first administrative review, and its prior determination: Commerce converted Fischer's United States sales from gallons to pounds solids using the actual Brix levels of those sales, and determined the unit price of the pounds solids. This methodology is completely reasonable given that the sales agreement does not explain why the prices of actual sales vary from the price per gallon given there. Commerce's duty is to weigh the evidence in the record, taking into account conflicting evidence and coming to a determination as to Fischer's United States NFC sales price. See Huvis Corp. v. United States, 570 F.3d 1347, 1351 (Fed. Cir. 2009). The Court will not upset that determination unless no reasonable decisionmaker could

*Court No. 08-00277* Page 9

reach such a decision after fully considering the record. Since it is clear that Commerce has given careful and close analysis to the evidence and come to a reasonable conclusion that takes the entire record into consideration, the Court sustains the Remand Results.

## Conclusion

For the reasons given above, upon full consideration of the Remand Results, comments and responses of all parties, and the administrative record, and all other papers and proceedings in this case, the Court affirms the Remand Results. It is hereby

**ORDERED** that Plaintiffs' motion for judgment upon the agency record is denied.

Judgment for Defendant will be entered accordingly.

      /s/Gregory W. Carman
      Gregory W. Carman, Judge

Dated:    November 23, 2010
            New York, NY

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| FISCHER S.A. COMERCIO, INDUSTRIA AND AGRICULTURA, and CITROSUCO NORTH AMERICA, INC, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> FLORIDA CITRUS MUTUAL, A. DUDA & SONS, CITRUS WORLD, INC., and SOUTHERN GARDENS CITRUS PROCESSING CORPORATION, <br><br> Defendant Intervenors. | **Before: Gregory W. Carman, Judge** <br> Court No. 08 00277 |

**J**UDGMENT

This case having been duly submitted for decision; and the Court, after due deliberation, having rendered a decision herein; now therefore, in conformity with said decision, it is hereby

**ORDERED** that Plaintiffs' Motion for Judgment on the Agency Record is denied, and it is further

**ORDERED** that Commerce's redetermination on remand is sustained.

   /s/Gregory W. Carman
Gregory W. Carman, Judge

Dated:     November 23, 2010
              New York, NY